## PINKERTON v. STATE.

### Opinion delivered December 22, 1919.

1. INTOXICATING LIQUORS—UNLAWFUL MANUFACTURE—EVIDENCE.—In prosecution for manfacturing spirituous liquors, contrary to Acts 1915, page 98, evidence *held* to sustain conviction.

2. CRIMINAL LAW—SUFFICIENCY OF VERDICT.—A verdict: "We, the jury, find the defendant guilty and assess his punishment at one year's imprisonment," was sufficient to sustain a sentence for one year's imprisonment in the penitentiary.

Appeal from Pike Circuit Court; *James S. Steel,* Judge; affirmed.

*Pinnix & Pinnix,* for appellant.

The evidence is not sufficient to sustain the verdict. Appellant was indicted as a principal, but on the trial the State adopted the theory that he was present aiding and

abetting the crime. Kirby & Castle's Digest, section 1646, does not relieve the State of the burden of proving at least some agency employed by defendant in the alleged commission of the crime. The State wholly failed to do this. No proof of his guilt was made, and the substantial rights of defendant were prejudiced by the informality of the verdict, and the court under it could not enter a sentence for felony. The court also erred in refusing the instruction asked by defendant. Where the jury are required to fix the punishment, they must do so in their verdict with certainty or the verdict will be bad. 5 Gratt. (Va.) 697; 43 Ala. 319; 52 Ga. 122; 1 Blackf. (Ind.) 28; 7 Leigh (Va.) 751; 12 La. Ann. 382; 5 Cal. 355; 35 N. E. 469; 24 S. W. 895; 8 Id. 892.

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, for appellee.

1. The evidence sustained the verdict, even if defendant had not taken the stand; it was a question for the jury whether his explanation of his presence was true or not, and they have found him guilty, which settles the matter, as there was no error in the instructions or their modification.

2. The verdict is good under our law, and he did not specifically except to it and can not now complain. 45 Ark. 524; 90 Id. 482.

HART, J. John Pinkerton prosecutes this appeal to reverse a judgment of conviction against him for the crime of manufacturing spirituous liquors.

The sheriff of Pike County received information that a wildcat still was located near the home of S. A. Morphew in Pike County, Arkansas, and with two deputies went there to investigate the matter. They located the still, which was of 150 gallons capacity, in a pasture about one-eighth of a mile from the residence of S. A. Morphew. They found a still full of mash and barrels and other things necessary to the operation of the still. The sheriff went off to get some breakfast for himself and deputies, and left his two deputies to watch the still.

According to their testimony S. A. Morphew came early in the morning and built a fire under the furnace. He then took the lid off of the still and began to stir the beer in it. After he had stirred the beer or mash for a while, the deputies arrested him and carried him off a short distance from the still, and one of them was left to guard him. Morphew had put the cap back on the still and laid the paddle down. After taking Morphew away, one of the deputies went back to watch the still. After he had stayed there some time, John Pinkerton, the defendant, approached the still and took off the cap which Morphew had placed on it before he left. Pinkerton then picked up the paddle which Morphew had left on the platform and went to stirring the mash or beer in the still, just as Morphew had done. After he had stirred it for about five minutes, the deputy sheriff arrested him.

The sheriff testified that he was familiar with the operation of a wildcat still, and that he found about a half of a quart of wildcat liquor at the still.

Morphew was the father-in-law of the defendant, and the defendant lived at his house. Morphew was a witness for the defendant and testified that the defendant had been sent to the penitentiary for manufacturing whiskey and had just come back from there the Christmas before the trial; that the defendant had lived at his house since he had been discharged from the penitentiary and was making a crop with him; that the defendant had nothing whatever to do with setting up the still, and so far as he knew the defendant did not know it was there; that he, Morphew, had set up the still by himself and had carried the mash from his dwelling house to the still; that both he and the defendant knew how to run a still and to manufacture spirituous liquors; that it is necessary in making liquor to keep the mash or beer stirred; that there was a dim path leading from his house to the place where the still was found in operation.

The defendant was a witness for himself, and admitted that he had been convicted of the crime of manufacturing intoxicating liquors and had been confined in

the penitentiary for that offense. He also admitted that he knew how to make spirituous liquors and to operate a still, but he said that he had determined to quit the business after he was discharged from the penitentiary. He testified that on the morning in question he went down into the pasture to look for a mule, and incidentally ran across the still; that the paddle was already in the mash and that he picked it up and stirred it around in there for a moment out of curiosity; that he did not stir the beer or mash, and had no intention of helping to manufacture spirituous liquors. The defendant was found at the still early one morning in June, and it was a rainy, misty morning.

The principal assignment of error relied upon by the defendant for a reversal of the judgment is, that the testimony is not sufficient to warrant the verdict. Our statute makes it a felony to manufacture or to be interested directly or indirectly in the manufacture of alcoholic, spirituous or fermented liquors. Acts of 1915, page 98.

In *Lowery* v. *State,* 135 Ark. 159, the court held that it was a violation of the statute to run the beer or mash through the process of distillation one time. It is true that in the case at bar the mash or beer had not been run through the still one time, but there was a bottle of wildcat whiskey found at the still. It was shown that the still had been set up there for three weeks, and that there was plenty of wood with which to run the furnace and of mash at the residence of Morphew with which to manufacture intoxicating liquors. Both Morphew and the defendant who lived with him knew how to operate a still. The still was situated in Morphew's pasture about one-eighth of a mile from his residence. These facts and circumstances were sufficient, if believed by the jury, to show that some one had manufactured spirituous liquors at the still, although both Morphew and the defendant denied that they had made or manufactured any spirituous liquors. Indeed, Morphew said that he had found the liquor in question at the still when he first procured

the still some several weeks before that time. His testimony and that of the defendant, however, only went to contradict the other testimony, and did not have the effect to wholly disprove it.

This brings us to the question of whether the proof was sufficient to show that the defendant was directly or indirectly interested in the manufacture of the liquor. It is true both he and Morphew testified that he was not interested in making the liquor and that he did not know anything about the still being there until the morning in question when he was arrested, but they are contradicted by the other facts and circumstances in the case. The still had been set up only an eighth of a mile distance from the residence of Morphew, where the defendant also lived. It is hardly probable that any one living there and working in the fields on the place could do so without seeing the smoke or other indications which would point to the operation of a still to one who like the defendant knew how to run the still himself and make intoxicating liquors. The mash was kept in an outhouse in the yard. There was a path leading from the house to the still. The deputy sheriff testified that the defendant walked up to the still, took the cap off of it and picked up a paddle lying there and began to stir the beer or mash just like Morphew had done earlier in the morning. The defendant knew how to make whiskey. Morphew said that he was stirring the mash for the purpose of making whiskey, and that this was necessary to be done. Therefore, the jury were warranted in believing that the defendant was assisting in the manufacture of the whiskey on the morning in question and had assisted in making the wildcat whiskey which was found at the still. See *Pinkerton v. State,* 126 Ark. 201.

The jury returned the following verdict: "We, the jury, find the defendant guilty and assess his punishment at one year's imprisonment."

Judgment was pronounced upon the verdict, and the defendant was sentenced to one year's imprisonment in the State penitentiary.

Counsel for the defendant urges that the verdict is not sufficient to support the judgment of the court. We can not agree with counsel in this contention. The statute provides but one punishment for the crime, and that is imprisonment in the State penitentiary for a period of one year. Hence there was no inconsistency between the verdict of the jury and the judgment and sentence of the court.

It follows that the judgment must be affirmed.